FILED
2018 Jan-25  PM 12:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

|  |  |  |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY and CONTINENTAL CASUALTY COMPANY As subrogee of Rabren General Contractors, Inc., an Illinois Corporation | ) ) ) ) ) ) |  |
|  | ) | CASE NO.: |
| Plaintiff, | ) ) | 7:17-cv-01082-LSC |
| v. | ) ) ) |  |
| CERTAIN UNDERWRITERS AT LLOYDS LONDON, a London Company; JOSEPH MIMS AND COMPANY, Inc., an Alabama Corporation; and JOE MIMS CONSTRUCTION, L.L.C., an Alabama Limited Liability Corporation, | ) ) ) ) ) ) ) ) ) |  |

Defendants.

## CONTINENTAL CASUALTY COMPANY'S
## FIRST AMENDED COMPLAINT

Plaintiff Continental Casualty Company ("Continental") files this First Amended Complaint for Declaratory Judgment, Equitable Contribution, Equitable Subrogation, and Contractual Subrogation. Continental seeks a declaration pursuant to 28 U.S.C.A. § 2201, as well as recoupment of costs of defense, investigation and remediation that Continental paid on behalf of Rabren General Contractors, Inc. ("Rabren"),

1

from Certain Underwriters at Lloyd's London ("Underwriters"), Joseph Mims and Company Inc., and Joe Mims Construction, L.L.C. Continental is suing defendants in its capacity as a subrogee of Rabren and directly in its own capacity as Continental Casualty Company, and alleges as follows:

## I. PARTIES

1.    Plaintiff Continental is an Illinois corporation, with its principal place of business located at 333 South Wabash Avenue, Chicago, Illinois 60604.

2.    Defendant Underwriters are composed of separate syndicates that underwrite insurance in one marketplace, Lloyd's of London. Each syndicate is organized under the laws of the United Kingdom, with its principal place of business in London, England.

3.    Upon information and belief and at all times pertinent, Defendant Joseph Mims and Company, Inc. was and still is an Alabama corporation with its principal place of business in Clanton, Alabama.

4.    Upon information and belief and at all times pertinent, Defendant Joe Mims Construction, L.L.C. is an Alabama limited liability corporation whose sole member is Joseph Mims, a citizen of the state of Alabama. The principal place of business of Joe Mims Construction, L.L.C. is located in Clanton, Alabama.

31051112 v1

5.    Upon information and belief and at all times pertinent, Joe Mims Construction L.L.C. is the successor to Joseph Mims and Company, Inc.    Hereinafter, Joe Mims Construction, L.L.C. and Joseph Mims and Company, Inc. shall be referred to separately and severally, as "Mims."

## II.  JURISDICTION AND VENUE

6.    This Court has jurisdiction over the subject matter of this action under 28 U.SC. § 1332(a), because Continental is a citizen of a different state than each of the defendants, and the amount in controversy exceeds $75,000.  Venue is proper in accordance with U.S.C. § 1391(a), because a substantial part of the relevant events occurred in this judicial district.

## III.  NATURE OF THE ACTION

7.    On or about August 14, 2014, Rabren, Continental's named insured, and Mims executed a subcontract agreement under which Mims agreed to provide in relevant part, demolition, backflow prevention, sanitary sewer system, trenching, backfilling, compaction, and excavation for the new construction of the Sewell-Thomas Stadium (the "Project") at the University of Alabama, in Tuscaloosa (the "Mims Subcontract").  Mims was required to purchase and maintain insurance coverage that named Rabren as an additional insured, pursuant to the express terms of the Mims

31051112 v1

Subcontract. A true and correct copy of the Mims Subcontract is attached hereto and incorporated herein as Exhibit "1".

8.     The Mims Subcontract also includes an indemnity provision under which Mims was required to defend, indemnify and hold harmless Contractor [Rabren] and Owner [University of Alabama] for "damage to or destruction of property (including loss of use thereof), caused in whole or in part by, arising out of, resulting from, or occurring in connection with the performance of the Work by Subcontractor [Mims], its subcontractors, or their agents, or employees, whether caused in part by the active or passive negligence or other fault of a party indemnified hereunder; provided, however Subcontractor's duty hereunder shall not arise if such injury, sickness, disease, death, damage, or destruction is caused by the sole negligence of a party indemnified hereunder." *Id.* at CCC000009.

9.     Mims procured commercial general liability policy number CIBEMAPAL0000003 from Underwriters, which was in effect between February 11, 2015 and February 11, 2016 (the "Underwriters Policy"). A true and correct copy of the Underwriters Policy is attached hereto and incorporated herein as Exhibit "2". Rabren qualifies as an additional insured on the Underwriters' Policy pursuant to the Automatic Additional Insureds endorsement. Rabren's additional insured coverage under the Underwriters'

Policy is primary and non-contributory to any coverage afforded to Rabren by Continental. *Id.* at CCC000008-9; CCC00036; Ex. 2. at CCC000051; Ex. 7 at CCC000274.

10.    Continental, directly as Rabren's general liability insurer, seeks a judicial declaration that Mims had a duty to defend and indemnify Rabren as an indemnitee under the Mims Subcontract, in relation to all of the property damage that was caused by sewer backup at the Project in October 2015, which lead to the University of Alabama's property damage claim (the "Claim"). Continental also seeks a declaration that Underwriters had a duty to defend and indemnify Rabren as an additional insured on a primary basis for the Claim. Continental seeks reimbursement from Mims and Underwriters for all amounts paid by Continental for repairs and remediation arising from the Claim, and for all defense and investigation costs.

## IV.    BACKGROUND

11.    On or about November 4, 2014, Rabren entered in to a general contract with the University of Alabama under which Rabren agreed to serve as the general contractor for the construction of the Project. A true and correct copy of the general contract is attached hereto and incorporated herein as Exhibit "3". As the general contractor, Rabren hired

subcontractors, including Mims, to handle certain aspects of the Project construction.

12.    Mims was performing work at the Project, on October 5, 2015, for Rabren pursuant to the Mims Subcontract. More specifically, Mims was moving a sand pile, which was located on a pad directly above a sewer cleanout.  The weight of the equipment that Mims used cracked the pad or displaced the cover to the sewer, which caused sand to settle into the sewer pipe.

13.    The settlement of the sand in the sewer pipe, resulted in a backup of water and sewage throughout the entire lower level of the Project, on or about October 5, 2015 or October 6, 2015.  In order to avoid additional water and sewage backup and to mitigate damages, Rabren worked with the University of Alabama to immediately clean the water and sewage from the Project, including water and sewage from several conduits in the electrical room where high voltage power lines were located.

14.    Based on information and belief, Mims initially agreed to help Rabren with the water and sewage cleanup by paying Servepro and by providing Mims' employees to assist with remediation and cleaning. However, Mims did not assist with remediation and cleaning, and has not

6

reimbursed Rabren or Continental for any of the property damage remediation to date.

15.    Continental reserved its rights to deny coverage to Rabren for the Claim based on: 1) Continental's understanding and Rabren's representations that Mims had accepted liability for the occurrence that caused the property damage and 2) Mims' representation that Mims had notified its own liability carrier, Underwriters, and that Underwriters was adjusting the loss.

16.    It was not until April 2016 that Rabren notified Continental that Underwriters was withholding payment of the Claim on Mims' behalf, at which time, Rabren requested that Continental pay the Claim and to pursue Underwriters directly.    At this point, Continental issued a supplemental reservation of rights letter. A true and correct copy of Continental's supplemental reservation of rights letter is attached hereto and incorporated herein as Exhibit "4". *See* Ex. 4 at CCC000141-143.

17.    On June 17, 2016, Continental also sent a formal demand letter by and through its counsel, to Underwriters' agent, Crawford & Company, seeking indemnity and contribution as per the Mims Subcontract.  A true and correct copy of Continental's demand letter is attached hereto and incorporated herein as Exhibit "5". *See* Ex. 5; CCC000144-145.

31051112 v1

18.    Underwriters finally responded to Continental's demands on November 8, 2016 in a formal coverage position letter, in which Underwriters denied that Rabren is an additional insured for the property damage at the Project, because "[R]abren is not an additional insured for liability that was not caused by an act or omission of Mims." A true and correct copy of the Underwriters' denial letter is attached hereto as Exhibit "6". *See* Ex. 6 at CCC000146-154.

19.    Underwriters maintain that their investigation is ongoing, in spite of the fact that Underwriters have not offered an alternative cause of the property damage to the Project.  Underwriters merely deny that Mims caused sand to settle into the sewer pipe at the Project and question the method and the extent of the repairs that were made without Mims and/or Underwriters' assistance.

## V.    THE CONTINENTAL POLICY

20.    Continental issued commercial general liability number 5093340669 to Rabren for the policy period of June 30, 2015 to June 30, 2016 (the "Continental Policy"). A true and correct copy of the Continental Policy is attached hereto and incorporated herein as Exhibit "7". The Continental Policy has a $1,000,000 each occurrence limit of liability and a $2,000,000 general aggregate.  Of these policy limits, Continental paid an

8

estimated $581,794.27 to investigate, remove the sewage and repair the property damage at the Project.

## VI.    ALLEGATIONS

RABREN IS AN ADDITIONAL INSURED ON UNDERWRITERS' POLICY.

21.    The Underwriters Policy includes an additional insured provision that states:

> The following provision is added to (SECTION II), Who Is An Insured.
> 4.    Any entity you are required in a written contract to name as an insured, is an additional insured (hereinafter called additional insured), but:
>
>      *   *   *
>
> b.    Only with respect to liability for "bodily injury", "property damage" or "personal or advertising injury" caused, in whole or in part, by your [Mims'] acts or omission or those acting on your behalf in connection with your premises, "your work" for the additional insured, or acts or omissions of the additional insured in connection with the general supervision of "your work" to the extent set forth below:
>
>      *   *   *

Ex. 2. at CCC00051.

22.    The property damage to the Project was caused in whole or in part by Mims' acts and omissions in connection with Mims' work pursuant to the Mims Subcontract.

23.    The Mims Subcontract defines Mims' work to include sanitary sewer system, backflow prevention, subdrainage, slope protection and erosion control, topsoil, clearing and grubbing, preparation of subgrade, erosion control and maintenance, as well as the "drainage and function of other existing utilities during operations". Ex. 1 at CCC00018-19. The Claim was caused in whole or in part by Mims' negligent failure to maintain the drainage and function of the existing sewer line and to otherwise complete its contractual duties, as per the Mims Subcontract.

24.    Moreover, Continental's investigation of the Claim revealed that Mims' work at the Project caused the property damage when a Mims' employee, while moving a sand pile, drove over the sewer pad and cracked the lid or otherwise displaced the sewer manhole covering to allow sand to enter the sewer line and cause blockage. Mims caused the sand infiltration into the sewer pipe, which ultimately caused the large water and sewage backup and property damage.

25.    The Mims Subcontract is a written contract under which Mims was required to add Rabren as an additional insured on the Underwriters Policy. Ex. 1 at CCC000008-9; CCC00036. Additionally, the property damage forming the basis of the Claim was caused in whole or in part by Mims' negligent acts while Mims was working at the Project. Thus,

31051112 v1

Continental is entitled to a judicial declaration that Underwriters had a duty to defend and indemnify Rabren in relation to the Claim.  Continental is also entitled to recoupment of all monetary amounts that Continental paid to defend and indemnify Rabren in relation to the Claim, including attorneys' fees, costs of investigation and remediation.

COVERAGE UNDER THE UNDERWRITERS POLICY IS PRIMARY.

26.    The Underwriters Policy affords primary additional insured coverage to Rabren at the Project, pursuant to the following condition:

> The following provision is added to (SECTION II), Who Is An Insured.
> 4.  Any entity you are required in a written contract to name as an insured, is an additional insured (hereinafter called additional insured), but:
>
>         *   *   *
>
> The insurance afforded by this endorsement for the benefit of the additional insured shall be **primary insurance**, and any other insurance maintained by the additional insured shall be excess and non-contributory.

[Emphasis added]. Exhibit 2 at CCC000051.

The Continental Policy's other insurance provision states:

> **4.    Other Insurance**
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
>         *   *   *
>
> **(b)  Excess Insurance**

31051112 v1

(1) This insurance is excess over:

Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

Exhibit 6 at CCC000274. The respective other insurance provisions included in the Continental Policy and the Underwriters Policy are not in conflict.

27.    When read together, the other insurance provisions demonstrate that the Underwriters' obligation to defend and indemnify Rabren as an additional insured was primary to any coverage afforded to Rabren by the Continental Policy.

28.    Because Underwriters' coverage was primary to any coverage obligation by Continental, Underwriters breached the terms and conditions of the Underwriters Policy when Underwriters denied having any duty to defend and indemnify Rabren against the Claim.

29.    Thus, Continental is entitled to a judicial declaration that Underwriters had a duty to defend and indemnify Rabren in relation to the Claim on a primary basis. Continental is also entitled to recoupment of all monetary amounts that Continental paid to defend and indemnify Rabren in

31051112 v1

relation to the Claim, including attorneys' fees, costs of investigation and remediation.

## MIMS HAD A DUTY TO INDEMNIFY AND HOLD RABREN HARMLESS AGAINST THE CLAIM.

30.     Pursuant to the Mims Subcontract, Mims had a duty to defend and indemnify Rabren in relation to the Claim.   The Mims Subcontract states:

> ARTICLE 14 – Indemnity
> 14.1 In exchange for ten dollars ($10.00) and other good and valuable consideration, receipt of which is acknowledged by execution of the Subcontract, Subcontractor agrees to defend, indemnify and hold harmless Contractor and Owner, and their officers, directors, agents and employees, separately and severally, from and against any claim, costs, expense, or liability (including attorneys' fees), attributable to bodily injury, personal injury, sickness, disease, or death, or to damage to or destruction of property (including loss of use thereof), **caused in whole or in part by, arising out of, resulting from, or occurring in connection with the performance of the Work by Subcontractor, its subcontractors, or their agents, or employees, whether or not caused in part by the active or passive negligence or fault of the party indemnified hereunder; provided however, Subcontractor's duty hereunder shall not arise if such injury, sickness, disease, death, damage, or destruction is caused by the sole negligence of a party indemnified hereunder.**   Subcontractor's obligation hereunder shall not be limited as to an amount or type of damages by provisions of any worker's compensation act, disability act or other employee benefit act.

[Emphasis added]. Exhibit 1; CCC000009-10.

31.    The Claim was caused by Mims' negligent failure to maintain the drainage and function of the existing sewer line, which is one of Mims' duties pursuant to the Mims Subcontract.

32.    Based on information and belief, as per Continental's investigation, Mims was the sole cause of the property damage, because its employee either cracked or otherwise displaced the cover to the sewer opening, thereby allowing sand to settle into the sewer system and cause blockage.

33.    In the alternative, the property damage arose out of Mims' work pursuant to the Mims Subcontract. As per the Mims Subcontract, Mims was obliged to defend and indemnify Rabren in relation to the Claim regardless of whether the property damage was caused in whole or in part by Mims, as long as the property damage arose out of, resulted from, or occurred in connection with Mims' work. *Id.*

34.    Thus, Continental is entitled to a judicial declaration that Underwriters had a duty to defend and indemnify Rabren in relation to the Claim. Continental is also entitled to recoupment of all monetary amounts that Continental paid to defend and indemnify Rabren in relation to the Claim, including attorneys' fees, as well as the costs of investigation and remediation.

31051112 v1

## VII. CAUSES OF ACTION

COUNT ONE
Contribution From Underwriters

35.     Continental reallages and incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

36.     It is well established Alabama law that an insurer that has paid the entire amount of the Claim may seek contribution from other insurers liable for the risk, as per the apportionment of liability defined in the respective insurance policies' other insurance provisions.

37.     Underwriters had a contractual obligation to defend and indemnify Rabren against the Claim, and that obligation was primary to any coverage obligation under the Continental Policy.

38.     Underwriters refused or otherwise failed to perform its contractual obligations including the duty to defend and indemnify Rabren against the Claim.

39.     As a result of Underwriters' breach of its duty to defend and indemnify Rabren, Continental defended Rabren and investigated and paid the Claim on behalf of Rabren.

40.     Continental is, thus, directly entitled to equitable contribution from Underwriters for the total amount that Continental paid to investigate

15

and defend the Claim, in addition to the costs to repair and remediate the property damage that forms the basis of the Claim.

WHEREFORE, Continental demands judgment against Underwriters for all amounts that Continental paid to defend and indemnify Rabren from the Claim, including attorney's fees and costs of investigation and remediation, plus interest and costs of court.

## COUNT TWO
### Equitable and/or Contractual Subrogation Against Underwriters

41.    Continental realleges and incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

42.    Alabama law generally provides that pursuant to equitable subrogation, the insurer that pays a loss caused by the actionable misconduct of a third party, becomes the owner of the claim against the third party.

43.    The Continental Policy also includes a contractual subrogation provision, which states "If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us [Continental].  The insured [Rabren] must do nothing after loss to impair them.  At our request, the insured may bring 'suit' or transfer those rights to us to help enforce them".

44.    Therefore, pursuant to the terms and conditions of the Continental Policy, Continental has become equitably and contractually

16

subrogated to the claims, rights and demands of Rabren.  Continental, as Rabren's subrogee, now stands in the shoes of Rabren and has standing to initiate legal action against Underwriters in this proceeding.

45.    As a result of the Claim and Underwriters' refusal to defend and indemnify Rabren, Continental was obliged to incur fees and costs on behalf of Rabren which were and are the obligation of Underwriters, in order to defend Rabren and investigate and remediate the property damage that is the subject of the Claim.    Underwriters had a contractual obligation to Rabren as its additional insured to defend and indemnify Rabren by handling the Claim on Rabren's behalf, which Underwriters failed to do.

46.    Continental's payments of all fees and costs associated with the Claim were not voluntary in that they were required for the protection of Continental's insured, Rabren.  Continental made payment solely because of Underwriters' failure to meet their direct contractual obligations to Rabren.

47.    Pursuant to Continental's equitable and/or contractual subrogation rights, Continental, as Rabren's subrogee, seeks 100% of the amounts paid by Continental to defend Rabren and to investigate and remediate the Claim for the benefit of Rabren.  Continental's subrogation claim is based on the Mims Subcontract, and independently on Rabren's

right to be defended and indemnified as an additional insured by Underwriters pursuant to the Underwriters Policy, in relation to the Claim.

WHEREFORE, Continental demands judgment against Underwriters for all amounts that Continental paid to defend and indemnify Rabren from the Claim, including attorney's fees and costs of investigation and remediation, plus interest and costs of court.

## COUNT THREE
### Equitable and/or Contractual Subrogation Against Mims

48.    Continental realleges and incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

49.    Alabama law generally provides that pursuant to equitable subrogation, the insurer that pays a loss, such as Continental, that is ultimately caused by the actionable misconduct of a third party, such as Mims' wrongful failure to indemnify Rabren for the Claim, the insurer becomes the owner of the of the claim against the third party.

50.    The Continental Policy states "If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us [Continental].  The insured [Rabren] must do nothing to after loss to impair them.  At our request, the insured may bring 'suit' or transfer those rights to us to help enforce them." *See* Exhibit 7; CCC000275.

51.    Therefore, pursuant to the terms and conditions of the Continental Policy, Continental has become equitably and contractually subrogated to the claims, rights and demands of Rabren. Continental now stands in the shoes of Rabren and has standing to initiate legal action against Mims in this proceeding.

52.    As a result of Mims' failure to defend and indemnify Rabren in relation to the Claim that was caused by Mims' negligence, as required by Article 14 of the Mims Subcontract, Continental was obliged to incur fees and costs on behalf of Rabren, which were the obligation of Mims, in order to defend Rabren and investigate and remediate the property damage that is the subject of the Claim. Mims had a direct contractual obligation to Rabren as its indemnitee to defend and indemnify Rabren by handling the Claim on Rabren's behalf, which Mims failed to do.

53.    Continental's payments of all fees and costs associated with the Claim were not voluntary in that they were required for the protection of Continental's insured, Rabren. Continental made payment solely because Mims failed to meet their direct contractual obligations to Rabren.

54.    Pursuant to Continental's equitable or contractual subrogation rights, Continental, as a subrogee of Rabren, seeks 100% of the amounts paid by Continental to defend Rabren and to investigate and remediate the

property damage that is the subject of the Claim. Continental's subrogation claim is based on the Mims Subcontract and Rabren's right to be defended and indemnified as an indemnitee by Mims, pursuant to the Mims Subcontract and in relation to the Claim.

WHEREFORE, Continental demands judgment against Underwriters for all amounts that Continental paid to defend and indemnify Rabren from the Claim, including attorney's fees and costs of investigation and remediation, plus interest and costs of court.

## COUNT FOUR
### Declaratory Judgment Against Underwriters and Mims

55.    Continental realleges and incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

56.    Continental seeks a judicial declaration regarding its rights to contribution and subrogation for the investigation and defense costs, as well as the remediation amounts, that Continental paid on Rabren's behalf for the Claim that was caused in whole by Underwriters' named insured, Mims. Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 (the "Act"), Continental seeks a judicial declaration that:

- Mims caused the property damage on which the Claim is based;
- Underwriters had the primary duty to defend and indemnify Rabren as an additional insured in relation to the Claim;
- Because Underwriters had the primary duty to defend and indemnify Rabren as an additional insured, Underwriters must

31051112 v1

reimburse Continental for 100% of the investigation and defense costs, in addition to all past and future remediation costs with respect to the Claim.

- Alternatively, Continental is contractually and/or equitably subrogated to Rabren's rights under the Underwriters Policy, and thus, as Rabren's additional insured carrier with the sole obligation to defend and indemnify Rabren in relation to the Claim, Underwriters must reimburse Continental for 100% of the past and future investigation and defense costs, in addition to all past and future remediation costs with respect to the Claim; and

- Continental is contractually and/or equitably subrogated to Rabren's rights under the Mims Subcontract, and thus, as Rabren's indemnitor under the Mims Subcontract, Mims must reimburse Continental for 100% of the past and future investigation and defense costs, in addition to all past and future remediation costs with respect to the Claim.

57.    Continental is an interested party under the Act.  There is an actual controversy between the parties concerning Continental's right to recover 100% of past and future investigation, defense costs and remediation costs with respect to the Claim.

## VIII. PRAYER

WHEREFORE, plaintiff Continental Casualty Company requests that the Court enter a Declaratory Judgment as requested above, and further enter judgment against the defendants for all amounts that Continental paid to defend and indemnify its insured Rabren from the Claim, including attorney's fees and costs of investigation and remediation, plus interest and costs of court.

21

_[signature]_

John C. Morrow (ASB-9424-O77J)
Robert S.W. Given (ASB-2114-I66R)

OF COUNSEL:
BURR & FORMAN LLP
420 20th Street North, Suite 3400
Birmingham, Alabama 35203
T: (205) 251-3000
F: (205) 458-5100
jmorrow@burr.com
rgiven@burr.com

Attorneys for Plaintiff
Continental Casualty Company

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email on this the 25 day of January 2018:

R. Bruce Barze, Jr.
M. Todd Lowther
Balch & Bingham LLP
Post Office Box 306
Birmingham, AL 35201-0306
tlowther@balch.com
bbarze@balch.com
_Attorney for Defendant Certain_
_Underwriters at Lloyds London_

A. Grady Williams
Richard B. Johnson
E. Barrett Hails
Phelps Dunbar LLP
101 Dauphin Street, Suite 1000
Mobile AL 36652
Bo.williams@phelps.com
Richard.Johnson@phelps.com
Barrett.Hails@phelps.com

Francis W. Speaks, Jr.
P.O. Box 1918
Clanton, AL 35046
speaksbill@gmail.com
_Attorneys for Defendants Joseph_
_Mims and Company and Joe Mims_
_Construction, L.L.C_

_[signature]_

OF COUNSEL

22